State v. Grundon.

tiff inasmuch as the only controversy between the parties was as to plaintiff's right to such preferential lien.

STATE OF MISSOURI ex rel., Respondent, v. OLIVER H. P. GRUNDON et al., Appellants.

**St. Louis Court of Appeals, November 19, 1901.**

1. **Notary Public: DUTIES OF IN TAKING ACKNOWLEDGMENT OF DEED: GOOD FAITH: NEGLIGENCE: LIABILITY OF NOTARY PUBLIC IN TAKING FALSE ACKNOWLEDGMENT: STATUTORY CONSTRUCTION.** Mere good faith will not excuse a notary public, for taking an acknowledgment of a deed conveying real estate, from the consequences of his negligence in failing to do what the statutes require him to do; that is, if the grantor is not personally known to him to be the person who subscribed to the instrument he must call in at least two witnesses, whom he does know, to prove the identity of the subscriber of the deed, and the names of these witnesses and their places of residence he must insert in his certificate (sec. 13, R. S. 1899).

2. ———: ———: ———. And if the notary does not know the subscriber of the instrument and relies on a mere introduction by a friend or an acquaintance of the person who subscribed the instrument, he assumes the risk of any mistake in his identity.

3. ———: ———: ———: BREACH OF NOTARY'S BOND. And if it turns out that the certificate is false, and that the person who acknowledged the deed is not the person he represented himself to be, and did not own the land described in the deed, the notary will be guilty of a breach of his official bond.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

AFFIRMED.

State v. Grundon.

### STATEMENT OF THE CASE.

One Jobe, in January or February, 1901, did some carpenter work on the home of Denis O'Leary, situated on South Broadway in the city of St. Louis, and in this way became acquainted with the fact that the property belonged to O'Leary. After this he appeared at the Union Trust building, introduced himself to the officers of the Union Trust Company, as Denis O'Leary and applied for a loan of five hundred dollars on O'Leary's South Broadway property. The trust company declined to make the loan, but a Mr. Anderson, a clerk of the company, introduced Jobe as O'Leary, to Mr. Secor, who in turn carried the application to the office of Noonan & Co., real estate agents, and they to the firm of McCullum & Tate, also real estate agents. The latter firm communicated with plaintiff in respect to the loan by the following letter:

"St. Louis, February 13, 1901.

"Wm. A. Westman.

"Dear Sir: I have a client who wants to borrow $500 at six per cent on 6704 S. Broadway, 50x125, brick building. Telephone me to-morrow sure what you think of it.

"Respectfully,

"McCullum."

After examining the property, plaintiff, on the same day he received McCullum's letter, called on him and agreed to take the loan and asked McCullum to have the abstract of title to the property run down. This was done by the Union Trust Company, showing clear title in O'Leary. After seeing the abstract, plaintiff agreed to call in the morning of the following day and close the transaction, and appointed the office of McCullum & Tate as the place of meeting.

The Haydel Real Estate Company occupied a part of the office occupied by McCullum. The defendant, Grundon, was a notary public and cashier of the Haydel Real Estate Company and occupied a desk in their office near a window, fenced off by a railing. Plaintiff called at the office of Mc-Cullum & Tate at the hour agreed on and was introduced to a man sitting there as Denis O'Leary, but who afterwards turned out to be Jobe. Plaintiff had prepared the notes and deed of trust for the loan before going to the office of Mc-Cullum & Tate, and after his introduction to the personator of O'Leary, handed them to McCullum, after which O'Leary signed them in the presence of plaintiff, and remarked (at the time), that he had some fire and tornado insurance that he would send down. The parties then went to the Union Trust Company to get the title run down to date, returned to the office of the Haydel Real Estate Company and the three, plaintiff, McCullum and O'Leary, stepped up to the railing in front of Grundon, and O'Leary was introduced to him as Denis O'Leary by McCullum, who stated that he (O'Leary) wanted to acknowledge a deed of trust. Grundon then took the deed, asked the usual questions of O'Leary as to whether it was his free act and deed and if he was single and unmarried, and then affixed his seal and signature to the certificate of acknowledgment. Grundon was not acquainted with O'Leary and asked no questions of McCullum as to the extent of his acquaintance with him, and asked no questions whatever of plaintiff. After the acknowledgment was taken the parties visited the recorder's office, and after finding the title still clear, plaintiff handed McCullum a cashier's check for the amount of the loan less charges for abstract, and deposited the trust deed for record in the recorder's office. The note was made payable to a clerk in plaintiff's office, who was also named as beneficiary in the deed of trust, but the money for the loan was furnished by the plaintiff and the loan was

for his benefit. A few days after the close of the transaction, plaintiff sold the note to a third party, but after learning that Jobe was not O'Leary, he took back the note and refunded the money for which he had sold it.

Not receiving the insurance policy promised by the fictitious O'Leary, plaintiff, on inquiring for the promised insurance learned that the pretended O'Leary was an impostor, had him arrested, and he was indicted, convicted and sent to the penitentiary for forging the note and trust deed. The check which plaintiff gave for the loan was a cashier's check issued by the Southern Commercial Savings Bank, payable to the order of W. A. Westman & Co., and was by plaintiff transferred to McCullom & Tate, and was for four hundred and ninety dollars. None of the money was found in the possession of Jobe when he was arrested nor has plaintiff been able to recover any of it from him.

The suit is on Grundon's bond as notary public for making a false certificate to the deed of trust and to recover the resulting damages. The answer was a general denial. Judgment was given for the plaintiff for the amount of the loan less commission, etc. The defendants duly appealed.

*W. E. Fisse* for appellant.

Upon several occasions, this court has been called upon to decide the question of the liability of a notary public for the injurious consequences of a false certificate of acknowledgment executed by him; but in none of these cases has there been any doubt that the misconduct of the notary was the proximate cause of the injury. Indeed, this series of cases is extraordinary in this respect: that the evidence as to the culpability of the officer was so direct and strong that it would have been sufficient to sustain an action against him for deceit. In the case at bar, an altogether different state of facts

is presented and the question is fairly raised, Was the action of the notary the proximate cause of the injury of which the plaintiff complains? In this jurisdiction, therefore, this case is "res integra." But though the form of the dispute is new, the rules of law available to determine the controversy are well established. The essential conditions upon which the responsibility of a notary for error in a certificate of acknowledgment must rest, are the same as in ordinary cases of deceit and misrepresentation. These essentials are that an intention to have the other party rely on the statements made, an actual reliance on these statements by the deceived party, and, most important of all, a rightful reliance on the misstatement by such deceived party. It can not be claimed that there was such reliance upon the false statement, if it appears that the complaining party had full opportunity to ascertain the truth, and neglected to avail himself of the opportunity, or where it appears that, after all, he acted upon his own conclusions as to the true facts in the situation presented to him.

*Hornsby & Harris* for respondent.

(1) The instruction given of its own motion by the court is a correct declaration of the law as applicable to the facts in evidence, and corresponds with the law on the subject, as heretofore declared by this court. State ex rel v. Meyer, 2 Mo. App. 413; State ex rel. v. Balmer, 77 Mo. App. 463; State ex rel. v. Plass, 58 Mo. App. 148. The instruction, after declaring that the notary who certifies to facts which he does not know of his own knowledge, does so at his own risk, requires the jury to believe from the evidence in order to find for plaintiff, that Westman in making the loan relied on Grundon's certificate. Consequently, plaintiff could not, as appellant suggests, recover under this instruction, if he relied on McCullum's introduction of O'Leary in

making the loan instead of on the notary's certificate. All that the law requires to fix the notary's liability in such case is that he make a wrong certificate, and that some third party relying on this certificate suffers a loss. And this the circuit court told the jury in the present instance. Whether or not Westman relied on the notary's certificate in making the loan was a question of fact upon which the jury, naturally, upon the evidence in the case, found for the plaintiff. (2) Appellant's second instruction was properly refused by the court. The testimony did not warrant it, and furthermore, even if it were otherwise correct, it was erroneous in not permitting the recovery, by plaintiff, of even nominal damages. State ex rel. v. Plass, supra; State ex rel. v. Thompson, 81 Mo. App. 557.

BLAND, P. J.—I.  Plaintiff, McCullum and Grundon were all well acquainted with each other and there is no pretense that either McCullum or Grundon acted in bad faith or were influenced in the transaction by other than correct and honest motives. Jobe had been introduced to McCullum as O'Leary. Acting for him to procure the loan, McCullum, in good faith and with no thought that Jobe was not the man he represented himself to be, introduced him to plaintiff and to the notary as O'Leary. The notary evidently relying on the introduction as a sufficient identification of the person whose acknowledgment he was about to take, without inquiry as to the identity of Jobe, took the acknowledgment and certified the person named in the deed of trust and who had subscribed the same, to be Denis O'Leary, in perfect good faith; so that if honesty of purpose and good faith is a good defense for Grundon's negligence, then he and his bondsmen should be allowed to go hence with their costs. But mere good faith will not excuse an officer for taking an acknowledgment of a deed conveying real estate, from the conse-

quences of his negligence in failing to do what the statutes require him to do, that is, if the grantor is not personally known to him to be the person who subscribed to the instrument, he must call in at least two witnesses whom he does know, to prove the identity of the subscriber of the deed, and the names of these witnesses and their places of residence he must insert in his certificate. Section 913, R. S. 1899. If he does not know the subscriber of the instrument, and relies on a mere introduction by a friend or an acquaintance of the person who subscribes to the instrument, he assumes the risk of any mistake in his identity. State ex rel. McKown v. Williams, 77 Mo. 463; and if it turns out that the certificate is false and that the person who acknowledged the deed is not the person he represented himself to be and did not own the land described in the deed, the notary will be guilty of a breach of his official bond. State to use v. Plass, 58 Mo. App. 148. It has been repeatedly held in this State that nothing short of a full and complete compliance with the statutes will exonerate a notary if his certificate of acknowledgment turns out to be false. State to use v. Meyer, 2 Mo. App. 413; State ex rel. McKown v. Williams, supra; State ex rel. v. Ryland, decided by Division Two of the Supreme Court at the April term, 1901 (not yet reported). But it is insisted by appellants that the conduct of the respondents, at the time the acknowledgment was taken, exempts them from liability, and they cite Overacre v. Blake, 82 Cal. 77, in support of this contention. The facts in the Overacre case were that plaintiff's agent introduced the impostor to the notary. The court in reference to this fact said:

"The party executing the mortgage having been introduced to the notary by the plaintiff, through her agent, duly acting for her in that behalf, she being the party to whom the mortgage was given and most likely of all persons to know with whom she was dealing, and the notary then seeing the

person so introduced execute the mortgage by signing it with the name so given him by the agent of plaintiff, and said agent witness the signature, it can not lie in the mouth of the plaintiff to say that the notary was guilty of negligence in certifying that such person was known to him to be the person who executed the same. Not only the doctrine of contributory negligence, but the doctrine of estoppel also applies to close the mouth of the plaintiff from asserting any claim against the sureties of the notary in such a case."

No such state of facts are shown by the evidence in this case. Respondent did not introduce Jobe to the notary, did not speak to the notary at all and it was Jobe's agent, McCullum, and not plaintiff, that did the honors of the introduction on the occasion. The respondent merely stood by and saw the notary take the acknowledgment, said nothing and did nothing to induce the notary to neglect the performance of his legal duty, and there is nothing in his conduct that can be said to have contributed to the negligence of the notary and certainly nothing by which he can be estopped, if an estoppel had been pleaded by the appellants.

II.   The contention that respondent showed no right of action in himself is but a quibble.   He furnished the money for the loan, it was made for his benefit and he was the real party in interest.   The fact that he sold the note and after hearing that Jobe was an impostor refunded the money and took the note back, reinvested him with both the interest and possession of the note, and he thereby became the absolute owner of both the note and deed of trust.

III.   In respect to the contention of appellant that the check for the loan was indorsed and delivered to McCullum and not to Jobe, it is sufficient to say that McCullum was the agent of Jobe to procure the loan and that payment to McCullum was payment to Jobe.

The views herein expressed make it unnecessary to notice the instructions given or refused since, on the uncontroverted facts, the judgment is for the right party and should be affirmed.

It is so ordered.    All concur.